BRYAN SCHRODER
Acting United States Attorney

YVONNE LAMOUREUX
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: yvonne.lamoureux@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:16-cr-00130-TMB |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | **UNITED STATES' SENTENCING MEMORANDUM** |
| ROBERT JOSEPH KLIMA, | ) ) | |
| Defendant. | ) ) | |

**SUMMARY OF SENTENCING RECOMMENDATIONS**

**TERM OF PROBATION……………………………………..…5 YEARS**

**SPECIAL ASSESSMENT……….....………………………….…$25**

//

The United States Probation Office (U.S.P.O.) has prepared a presentence investigation report (PSR) in this case. The United States agrees with the factual and legal findings of the U.S.P.O.

On January 20, 2017, Klima pled guilty to Count 1 of the Information, a Class A misdemeanor violation of Freedom of Access to Clinic Entrances (18 U.S.C. § 248). As set forth in the Plea Agreement filed at docket 42, the parties agree to recommend that the defendant be sentenced to a five-year term of probation with special conditions that (1) the defendant serve three months in home detention; (2) the defendant shall not consume any alcohol and shall not possess any alcoholic beverages during the period of probation; (3) the defendant shall obtain an alcohol and substance abuse assessment and follow all recommendations, and participate in and fully comply with an alcohol and substance abuse treatment program approved by the United States Probation Office, which program shall include testing to determine whether the defendant has reverted to the use of drugs or alcohol; (4) the defendant shall participate in anger management classes; (5) the defendant shall obtain a mental health assessment and follow all

recommendations; and (6) the defendant shall not contact Planned Parenthood in any manner, telephonically, electronically, or physically.

## I.  GUIDELINE APPLICATIONS

### A.  Offense Level, Acceptance of Responsibility, and Criminal History Category

#### 1.  Offense Level

The U.S.P.O. has calculated Klima's base offense level under U.S.S.G. § 2H1.1 as level 10.  PSR ¶ 23.  The government recommends this finding as the base offense level for Klima's conduct.

#### 2.  Acceptance of Responsibility

U.S.S.G. § 3E1.1 allows for a two-level decrease to the defendant's criminal offense level for acceptance of responsibility where the offense level is less than level 16.  The defendant pled guilty and agreed to the facts which constitute the essential elements in the count of conviction.  The defendant also provided timely notice to the government of his intention to enter a plea of guilty.  Therefore, the government recommends a two-level decrease in the defendant's criminal offense level.

//

With the two-level decrease for acceptance of responsibility, the total offense level is 8. PSR ¶ 31.

### 3. Criminal History Category

The U.S.P.O. has calculated Klima's criminal history to be two criminal history points, placing Klima in Criminal History Category II. PSR ¶ 43. The government agrees that this is an accurate computation of Klima's criminal history.

## B. Recommended Sentence

The advisory U.S.S.G. range for Klima with a Criminal History Category II and an offense level of 8 is 4-10 months' incarceration. PSR ¶ 86.

The government recommends a sentence of five years' probation with the special conditions listed above, and a special assessment of $25 for the count of conviction.

## II. APPLICATION OF 18 U.S.C. § 3553(a)

The crime itself and the history and characteristics of the defendant are factors the Court must consider when fashioning an appropriate sentence for the defendant. An application of the factors

set forth in 18 U.S.C. § 3553(a) supports the imposition of five years' probation with the special conditions listed above.

### A. The nature and circumstances of the offense.

On November 6, 2016, Klima intentionally intimidated and interfered with, and attempted to intimidate and interfere with reproductive health care providers at the Planned Parenthood Clinic in Anchorage, Alaska by threat of force in order to intimidate them from providing reproductive health services. Specifically, the defendant left three threatening voicemail messages for reproductive health care providers at the Planned Parenthood within a one and a half-hour timeframe on the night of November 6, 2016. In the first voicemail message, the defendant stated that if reproductive health care providers at Planned Parenthood performed an abortion for another individual, the defendant would "treat you just as a murderer who murdered my child." The defendant also stated, "I can guarantee you I know what to do." In the second voicemail message, the defendant instructed the reproductive health care providers at Planned Parenthood to call him back to "avoid any kind of unpleasantries" that may result if an abortion was performed for that other individual. In the third voicemail

message, the defendant told the reproductive health care providers at Planned Parenthood, "I got a message today and apparently there is an RPG trained on your position. I suggest not being open tomorrow." "RPG" referred to a rocket-propelled grenade, an explosive.

Between November 6 and November 8, 2016, Klima texted another individual regarding his intentions. Those texts were previously filed in this case and attached as Exhibit 2 to docket 11. Klima texted the following:

Text 291: I don't even mind telling you knowing full well you might have to tell the police. Still not going to stop me

Text 293: I seriously will kill someone

Text 303: I can and will kill somebody who stands between me and my happiness

Text 311: I don't even care if you call the police to try and stop me because it won't be able to. I'm going to kill the person who murdered my child and that's that

Text 313: I can and will put a bullet right through their forehead and go ahead and have coffee afterwards

//

U.S. v. KLIMA
3:16-cr-00130-TMB

Text 315: I have absolutely no problem killing someone who killed my child

Text 317: I will do it.  They fukong deserved it

Text 319: I may be going to jail.  I did something prettt radical. But im okay with it.

Text 502: Im going to kill that fat ass.

Klima also texted threats to W2 between November 6, 2016 and November 10, 2016.  Those texts were previously filed in this case and attached as Exhibit 1 to docket 11.  Klima texted the following:

Text 178: . . . your days are numbered

Text 214: . . . Hope you have a backhoe because your going to need one

Text 232: I don't want to do anything but u killed my child and I have to

Text 238: But don't worry you're going to get a wake-up call.  Anyone who can kill a child knowing full well that it would have been loved and taken care of deserves anything I will dish out.  Good luck with the rest of your f***** up life you killing my child is something you're going to regret for the rest of your life. I will see to that

Text 256: you killed something of mine I think I need to kill something of yours

U.S. v. KLIMA
3:16-cr-00130-TMB

7

Text 258: I'll show you what f****** cruel is

Text 260: You have never seen anything like what I'm going to unleash

Text 262: and if you think this is over. Brace yourself I don't take kindly to Someone Like You who is this cruel. You murdered my child and I'm going to destroy yours for that.

Text 264: … Just remember what goes around comes around and I would expect something very f****** cruel to happen to you for that. …

Text 325: … If I have to I'm going to do something pretty f****** extreme to stop you. Please don't make me do that

Text 359: … And a murderer deserves to die a slow painful death

Text 371: sorry to have to get this way. But you've left me no choice. I will not allow you to murder my child and go unpunished.

Text 377: Just remember eye for an eye

Text 463: I will get even

Text 465: Wanna [f***] with me! I will [f***] with yu

Text 581: Karma is going to speak to you. No one kills my child and gets away with it.

//

//

## B. The history and characteristics of the defendant.

Klima, age 52, has had a number of contacts with law enforcement, some of which have resulted in misdemeanor convictions. Klima has no felony convictions. His criminal history dates back to 1985, at the age of 20 for breaking and entering. Klima has been convicted of the following misdemeanors: breaking and entering (age 20), larceny (age 25), domestic violence (age 34), malicious destruction of personal property (age 34), attempted resisting and obstructing a police officer (age 34), resisting an officer (age 38), operating while intoxicated (age 40), reckless driving (age 44), and violating stalking or sexual assault protective order (age 49). Only the last two convictions were allocated any criminal history points, placing Klima in Criminal History Category II.

These were not Klima's only contacts with law enforcement. As reflected in paragraphs 45 through 57, there were separate criminal cases related to harassment, assault, and domestic violence which were dismissed. Separately, there have been a number of domestic violence protective orders filed against Klima.

//

U.S. v. KLIMA
3:16-cr-00130-TMB

Klima has had a long history of severe alcohol abuse. He has been in intensive outpatient treatment since December 2016. Klima has some employment history, having worked in a variety of positions including as a flooring installer. PSR ¶¶ 75-79.

### C. The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

Klima's threats of violence and force to the reproductive health care providers at the Planned Parenthood Clinic are very serious. Threats of force in order to intimidate health care providers from providing health services place health care providers in fear, not only for their own safety but also for the safety of the patients and members of the public who may be at the healthcare facility. The statute specifically protects the freedom to access healthcare clinics and the related health services. Klima's conduct unnecessarily jeopardized the trust that healthcare providers place in a safe work environment. In addition, there is a significant public safety risk when a violent individual, who possesses numerous kinds of firearms, is under the influence of alcohol and making threats of violence.

//

A sentence of five years' probation with the recommended special conditions is necessary to reflect the seriousness of Klima's conduct, promote respect for the law, and provide just punishment.

### D. The need for the sentence to afford adequate deterrence to criminal conduct.

The sentence must be sufficient to adequately deter criminal conduct, both for the defendant and the general community. A lengthy probation sentence is necessary to deter Klima from continuing to threaten others. While Klima has served short terms of imprisonment for prior convictions, Klima's longest term of probation to date has been two years. Klima most recently in 2014 was sentenced to one year probation for violating a stalking or sexual assault protective order.

In addition, general deterrence to other offenders who commit crimes of making threats of violence, including threats to harm individuals and damage property, must be considered. Even when threats convey false information, there can be significant impacts on law enforcement and emergency response resources to respond to such threats. Moreover, such threats victimize innocent members of society, such as health care providers who are providing health services.

### E. The need for the sentence to protect the public from further crimes of the defendant and to provide the defendant with needed training and treatment.

There is a real need to protect the public from further crimes committed by Klima and to provide Klima with needed treatment. In 2014, Klima was convicted of violating a protective order, then in 2015 he was charged with harassment and in 2016 he was charged with assault, all of which involved different victims. In addition, the recommended sentence will provide the defendant with the opportunity to seek alcohol and substance abuse treatment. Klima has a severe alcohol abuse problem. Klima has been undergoing treatment since December 2016, and the recommended special conditions of probation will require him to continue to follow the recommendations of his treatment provider through the term of probation.

### F. The kinds of sentences available.

While the advisory U.S.S.G. range is 4-10 months' imprisonment, the parties' recommended term of probation, combined with the special conditions of probation, will satisfy the goals of § 3553(a). The five-year term of probation is a longer term of supervision than the one-year term

of supervised release that would otherwise be authorized following a term of imprisonment in this case.

## III. CONCLUSION

A five-year term of probation with the recommended special conditions is sufficient but not greater than necessary to satisfy the goals of the U.S.S.G. and 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED April 7, 2017, in Anchorage, Alaska.

> BRYAN SCHRODER
> Acting United States Attorney
>
> s/ Yvonne Lamoureux
> YVONNE LAMOUREUX
> Assistant U.S. Attorney
> United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2017,
a true and correct copy of the foregoing was
served electronically on the following:

Jamie McGrady

s/ Yvonne Lamoureux
Office of the U.S. Attorney

U.S. v. KLIMA
3:16-cr-00130-TMB